**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-134** |
| **CELESTE RAMIREZ** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Celeste Ramirez comes before this Court to be sentenced for her role in the sexual exploitation of children in our community. For the reasons set forth below, the government requests that the Court accept the sentence proposed by the parties in the plea agreement, and impose a 15-year term of imprisonment, followed by ten years of supervised release, and a total of $43,000 in restitution to her victims. Based on her heinous criminal conduct, the government respectfully submits that the proposed sentence and restitution amount be ordered by this Court.

## I. PROCEDURAL BACKGROUND

On March 30, 2023, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment against defendant Celeste Ramirez, charging her with one count of distribution of child pornography in violation of Title 18, United States Code, Section 2252(a)(2), (b)(1).

On March 4, 2025, the defendant pled guilty to the indictment. The parties entered into a guilty plea agreement to the count listed in the indictment under Federal Rule of Criminal Procedure 11(c)(1)(C), wherein the parties agreed that the following specific sentence is the appropriate disposition of this case: a sentence of imprisonment of 180 months' imprisonment, a 10-year period of supervised release, and restitution of at least $3,000 per victim. If the Court does

not accept this plea agreement, then either the defendant or the government will have the right to withdraw from the plea agreement.

A sentencing hearing is scheduled before this Court on July 25, 2025 at 2 p.m.

## II. CRIMINAL CONDUCT

On February 19, 2022, Celeste Ramirez, a corrections officer employed by the New York Department of Corrections, distributed six videos depicting child pornography via Telegram, an online messaging application, to Person 1 while Person 1 was in Easton, Pennsylvania.

Defendant Ramirez's conduct came to light during an investigation into child exploitation crimes committed by Person 1. In 2022, Pennsylvania State Police received a Cybertip indicating that a resident of Easton, Pennsylvania, had used their Snapchat account to distribute child pornography. In July 2022, Pennsylvania State Police executed a search warrant on Person 1's residence. Person 1 provided the password to their cell phone and confessed to receiving child pornography over the internet. Person 1 identified receiving child pornography through Telegram from a corrections officer in New York City known as "CeCe".

Business records identified "CeCe Babes" as the defendant. On November 29, 2022, federal agents executed a search warrant of the defendant's residence. Ramirez denied knowing whether child pornography existed on her cell phone. A subsequent forensic examination showed Ramirez's Samsung Galaxy Z Fold3 cell phone held 473 videos of child pornography as well as the Telegram application. Her Telegram application stored child pornography including the same videos distributed to Person 1 on February 19, 2022.

The Telegram chat conversation from that date was found on both the defendant and Person 1's cell phones. Below is an excerpt from that chat:

**February 19, 2022 Excerpt of Telegram Communication**

Ramirez: Hey

Person 1: Gotcha

Person 1: The guy on I met on here too

Ramirez: What guy?

Ramirez: With the $800 file?

Person 1: Yes

Ramirez: Oh ok

Ramirez: *Transmitted a 19-second video depicting a toddler, approximately two to three years of age being anally penetrated by an adult's penis.*

Person 1: Damn that's hot asf..

Person 1: That's a lil girl

Person 1: I want to do that bad

Ramirez: Yessss

Ramirez: *Transmitted a 40-second video depicting an adult male forcefully orally penetrating a young child, approximately four to five years of age with his penis.*

Person 1: You want son to do that babes

Person 1: Fuck yea

Ramirez: *Transmitted a 1:05 video depicting an adult orally penetrating the vagina of a female infant, approximately six months to one year of age.*

Person 1: You want that Cece

Ramirez: Yes I do

***

The forensic extraction of Person 1 cellular phone confirmed that they were in Easton, Pennsylvania on the date of Ramirez's distribution of child pornography.

In addition to the Telegram communications with Person 1, Ramirez utilized Telegram to communicate with five other users for the purpose of distributing and receiving child pornography. One of those users, Cleveland Dewayne Chambers, communicated with the defendant on April 11, 2022. Chambers told the defendant he was chatting online with another woman, later identified by police as Raven Pointer, who had offered to produce sexually explicit images of an infant in her care. Chambers shared images he had received thus far from Pointer with the defendant. Ramirez and Chambers discussed how the child should be sexually abused and reflected on the images produced. Ramirez then repeatedly directed Cleveland to have Pointer film herself engaged in specific sex acts with the infant. Chambers responded by sharing additional sexually explicit images/videos produced by infant's guardian.

On January 31, 2025, Cleveland Dewayne Chambers was sentenced to 20 years' imprisonment for the offenses of production of child pornography and receipt/distribution of child pornography. *See USA v. Chambers*, Crim. No. 24-317 (M.D. Alabama). On May 6, 2025, Raven Pointer was sentenced to 25 years' imprisonment for the offenses of production of child pornography and distribution of child pornography. *See USA v. Raven Pointer*, Crim. No. 23-547 (E.D. Missouri).

## III. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The Court may impose the following statutory maximum and mandatory minimum sentence for one count of distribution of child pornography: 20 years' imprisonment, a mandatory minimum of 5 years of supervised release up to a lifetime of supervised release, $250,000 fine, $100 special assessment, and, if found not to be indigent, additional assessments of $5,000 under 18 U.S.C. § 3014 and up to $17,000 under 18 U.S.C. § 2259A.

The defendant is also subject, under 18 U.S.C. § 2259, to mandatory restitution of not less than $3,000 per victim. In paragraph 7 of the plea agreement, the defendant agreed that under 18 U.S.C. § 3663A(a)(3), the victims entitled to restitution include those identified in the count of conviction, in the relevant conduct, and in the statement of facts in support of the guilty plea agreement.

The defendant will have to register under the Sex Offender Registration and Notification Act (SORNA) as required by federal and state law. These registration requirements may apply throughout her life and failure to register is punishable under federal law.

### B. Sentencing Guidelines Calculation

The government agrees with the United States Probation Office that the defendant's advisory guideline range is capped at the statutory maximum of 240 months.

Pursuant to Guideline Section 1B1.2, the parties stipulated that the defendant committed the following offense that is a more serious offense than the offense of conviction, and the defendant understands and agrees that Section 1B1.2(a) provides that this more serious offense shall be the basis for the determination of the defendant's Sentencing Guidelines range and

pursuant to Section 1B1.3 shall be considered relevant conduct:  On or about April 11, 2022, in the Eastern District of New York, defendant Celeste Ramirez conspired with another to persuade, induce, entice, or coerce a child under the age of five to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct and Ramirez knew the visual depictions would be transported and transmitted using a facility of interstate and foreign commerce, namely the internet, in violation of 18 U.S.C. § 2251(a), (e). The government further agreed to a three-level downward adjustment due to her timely acceptance of responsibility.

Based on the terms of the plea agreement and the defendant's criminal conduct, the defendant's guidelines for Count One (distribution of child pornography) are calculated as follows:

| | |
|---|---|
| Base offense level, USSG § 2G2.1 | 32 |
| Offense involved a minor under the age of 12, USSG § 2G2.1(b)(1)(A) | +4 |
| Offense involved sexual contact, USSG § 2G2.1(b)(2)(A) | +2 |
| Offense involved distribution of child pornography, USSG § 2G2.1(b)(3) | +2 |
| Offense involved an infant/toddler, USSG § 2G2.1(b)(4)(B) | +4 |
| Acceptance of responsibility, USSG § 3E1.1(a) | -2 |
| Timely notification, USSG § 3E1.1(b) | -1 |
| | |
| TOTAL OFFENSE LEVEL | 41 |
| CRIMINAL HISTORY | I |
| GUIDELINE RANGE | 324 – 405 |
| STATUTORY MAXIMUM PENALTY | 240 |
| STATUTORY MANDATORY MINIMUM | 60 |

## IV. SENTENCING ANALYSIS

The Third Circuit has set forth a three-step sentencing process which courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, footnote, and citations omitted). In calculating the guideline range, a court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (*en banc*). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

The Supreme Court has stated: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see Hughes v. United States*, 584 U.S. 675, 685 (2018). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

At the third step of the sentencing process, a court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) to

determine the appropriate sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted); *see Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.").

**Consideration of the 3553(a) Factors**

This Court must consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The government discusses the factors relevant to Ramirez's sentencing below.

**A. The nature and circumstances of the offenses.**

The defendant was a public servant and law enforcement officer who collected, distributed, and conspired to direct child sex abuse videos. She repeatedly distributed video of the raping and sexual abuse of infants and toddlers to others online. Ramirez herself amassed hundreds of depictions capturing children being sexually abused and exploited. When Ramirez learned of the opportunity to actively participate in producing her own child pornography, Ramirez did not hesitate. She plotted with Chambers as to how an infant child should be victimized by her guardian. Her perverse desire to view the sexual abuse of young children led to the abuse of a young child in real time. Her many roles in harming children in our community warrants a lengthy term of imprisonment.

**B. The history and characteristics of the defendant.**

As a corrections officer, Ramirez masqueraded as a keeper of law and order in a setting of criminals. In reality, Ramirez was also committing her own heinous crimes. At the time of the criminal conduct, the defendant was 42 years old. She has no dependents and no prior criminal record. The proposed joint sentence appropriately reflects her role in the community and her crimes against children.

**C. The seriousness of the offense, respect for the law, deterrence and just punishment**

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2). Child sexual exploitation crimes are undisputedly grave offenses. Ramirez actions in conspiring to produce child pornography has effectively uprooted the family tree of a young child. Not only has this victim's childhood been permanently derailed, but the child and their

family will now have to suffer the ceaseless trauma of knowing their depictions are being circulated to strangers in the horrid underground market of child pornography.

As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens.  Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). As discussed in the numerous victim impact letters submitted to this Court, these types of crimes have a long-lasting and devastating impacts on the child victims and their family. *See* Sealed Government Sentencing Exhibit A (Victim Impact Statements). The terror and anxiety each victim carry with them as a result of the defendant's conduct underscores the serious nature of her offense.

By violating the laws designed to protect children, the defendant has demonstrated that she has little respect for the law.  The recommended sentence of 15 years' incarceration will serve to justly punish this defendant, and serve to deter her and other like-minded individuals.

**D. Restitution**

The government respectfully requests a restitution order totaling $43,000. The government anticipates an agreement between the parties to this restitution amount. The below chart details the restitution amounts on behalf of each individual child victim:

| Victim Pseudonym | Amount Requested |
|---|---|
| Production Victim #1 | $15,000[1] |
| Jenny | $3,000 |
| Pia | $3,000 |
| Sloane | $10,000 |
| PD11 | $9,000 |
| Audrey | $3,000 |
| **Total** | $43,000 |

The first restitution request is made on behalf of the family of the child victim related to the Ramirez's conspiracy to produce child pornography. The child's father requests $15,000 towards the costs of expenses accrued as a result of the child's victimization, to include relocating the child into a new residence. *See* Ex. D (Father of Minor #1 Restitution/Victim Impact Statement). Raven Pointer was also court-ordered to pay this same amount of restitution, and therefore the restitution request of $15,000 should be ordered joint and severally liable with Pointer.

Additionally, Ramirez is required to pay restitution to the five child victims identified in the defendant's extensive child pornography collection request restitution for the harm resulting

[1] This amount of $15,000 should be ordered joint and severally liable with Raven Pointer, Crim. No. *USA v. Raven Pointer*, Crim. No. 23-547 (E.D. Missouri).

from the defendant's exploitation. As discussed further below, the United States respectfully submits that there is a legal and factual basis sufficient for this Court to order restitution on behalf of these child victims.

Pursuant to 18 U.S.C. § 2259(b)(2), this Court must first determine the full amount of losses that were incurred or are reasonably projected to be incurred by the victim, and then shall order restitution which reflects the defendant's "relative role in the causal process" that is no less than $3,000.

As to the relative role the defendant has in each victim's harm, in *Paroline v. United States*, the Supreme Court laid out the considerations necessary to determine restitution awards in child pornography cases. 572 U.S. 434 (2014). The Court listed "a variety of factors district courts might consider in determining a proper amount of restitution," noting that "it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development." *Id*. at 459-60. The list of factors is neither mandatory nor exhaustive, but "could include" the following:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id*. at 460.

In this case, in support of the loss amount attributable to each victim, the United States

submits records on behalf of each of the seven victims requesting restitution. *See* Sealed Government's Exhibits B-1 through B-5. These voluminous records verify how the victims have suffered and will continue to suffer harm in the future as a result of the defendant's criminal conduct.  The victims' requests are primarily based on need to recover the cost of current and future therapy treatment. The defendant, and others like him who partake in the horrid underground market of child pornography, perpetuate the harm to the victims by creating demand and fueling this market, not only by spurring the production of such images, but also by propelling the continuous circulation of older depictions of sexual abuse.  The children who appear in the images are victimized every time their depictions are downloaded, purchased, or viewed by another individual.  Given the expansive scope of the Internet, their exploitation is ongoing and relentless. The defendant's part in the continued victimization of these children is consequential and each request for restitution is wholly valid.

To aid in the *Paroline* analysis, the Government attaches to this pleading Government Sentencing Exhibit C.  The chart contains known details of any other offenders who have been prosecuted and ordered to pay restitution to the identified victim. This exhibit summarizes the number of files the defendant possessed of each victim – one of the *Paroline* factors enumerated above.

In summary, the voluminous records document how Ramirez's crimes have contributed to the lifelong harm inflicted on these child victims. There is ample support for this Court to award restitution in the collective amount of $43,000.

**E. <u>Other considerations</u>**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" *Id.* at § 3553(a)(2)(D). Every facility within the Bureau of Prisons provides some level of mental health treatment and, for sex offenders like the defendant, there is specialized treatment at a number of BOP facilities, including the Sexual Offender Management Program, which is staffed by highly trained psychiatric professionals. These concerns do not serve to mitigate the jointly proposed sentence of incarceration.

## V. CONCLUSION

For all of the reasons outlined above, the jointly recommended sentence of 15 years' incarceration followed by ten years' supervised release is appropriate in this case. The government respectfully requests that this Court adopt the proposed terms of the plea agreement and order a collective total of $43,000 to the child victims.

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ *Priya T. De Souza*
PRIYA DESOUZA
Assistant United States Attorney

June 23, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within memorandum has been served this date by electronic mail to:

Nancy MacEoin
Federal Defender Association
601 Walnut Street, Suite 540 West
Philadelphia, PA 1906

Mark Corpora
United States Probation Office
Mark_corpora@paep.uscourts.gov

*s/Priya T. De Souza*
PRIYA T. DE SOUZA
Assistant United States Attorney

June 23, 2025